UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MANUEL GARCIA, | } |
| | } |
|      Plaintiff, | } |
| VS. | }   CIVIL ACTION NO. H-07-1081 |
| | } |
| KINDER MORGAN , INC, *et al*, | } |
| | } |
|      Defendants. | } |

**OPINION & ORDER**

Pending before the Court are Knight Inc. f/k/a Kinder Morgan, Inc.'s ("Kinder Morgan") Motion for Summary Judgment (Doc. 21), and the response and reply thereto. Also before the Court are Defendants KMGP Services Company Inc. and Kinder Morgan Petcoke LLC's ("Third Parties") Unopposed Motion to Dismiss (Doc. 22). For the reasons explained below, the Court GRANTS the motion for summary judgment and GRANTS the motion to dismiss.

**I.      Background & Relevant Facts.**

Plaintiff Manual Garcia ("Garcia") alleged in his complaint that his employer Kinder Morgan, by terminating his employment, violated the Family Medical Leave Act ("FMLA"), the Americans With Disabilities Act ("ADA"), and was in breach of contract with him by withholding short term disability ("STD") and long term disability ("LTD") benefits.

Kinder Morgan employed Garcia as a painter/welder starting on April 20, 2005. Doc. 21 Exh. 2 at ¶9. Throughout 2005, Kinder Morgan issued oral and written warnings to Garcia for unexplained absences from work. *Id.* at ¶10.

Beginning in November 2005 and ending with his termination in April 2006,

Garcia applied for and received STD benefits and FMLA leave in three periods.  According to Kinder Morgan's policy, STD benefits ran concurrently with FMLA leave.  Doc. 21 Exh. 2-A at 8.  ESIS, a third party administrator, processed any Kinder Morgan employees who claimed STD in the 2005/2006 period.  Doc. 21 Exh. 5 at ¶2.  ESIS's Benefits Specialist checked with the employee's doctor to verify the health problem claimed and, if confirmed, made a decision whether this health problem was covered by Kinder Morgan's STD policy.  *Id*. at ¶4.

Garcia was approved for STD benefits and FMLA leave from November 17, 2005, to December 5, 2005.  Doc. 21 Exh.2 at ¶11.  He was again absent from work on STD benefits and FMLA leave from December 16, 2005, until December 30, 2005.  *Id*. at ¶13.  Finally, he applied for and received approval for FMLA leave and STD benefits starting on February 3, 2006.  Id. at ¶14.

Kinder Morgan's FMLA leave designation form, given to employees whenever FMLA leave was granted, gave employees an ending date for their leave.  Doc. 21 Exh. 2 at ¶12.  The form explained that, as FMLA leave was limited to 12 weeks in any 12 month period, "the ending date will be either (1) your return date if less than twelve weeks or (2) the maximum duration of leave."  *Id*.  When Garcia took his final leave of absence, he was given a leave designation form that erroneously stated that he had 84 days remaining of FMLA leave, which meant he was cleared for leave until April 27, 2006.  *Id*. at ¶15.  In fact, because of his two prior FMLA leave absences in the past 12 months, Garcia had only 37 days leave remaining.  *Id*. at ¶14. Thus, Garcia would have used up his maximum FMLA leave by March 27, 2006.  Furthermore, when ESIS checked Garcia's medical status with his doctor, Garcia's doctor only stated he would be healthy enough to return to work by March 20, 2006.  *Id*. at ¶16.

Garcia did not return to work by March 20, 2006.  Starting in late March, Fred Rosser ("Rosser") the Manager of Human Resources at Kinder Morgan asserts he and Garcia's supervisor Mario Cuellar ("Cuellar"), as well as ESIS Benefits Specialist Rebecca Trippe ("Trippe') contacted Garcia and informed him he would need to provide medical documentation of his health problems beyond March 19, 2006.  Doc. 21 Exh. 2 at ¶17.  According toRosser, Garcia replied to these inquiries that he was too sick too work and could not return; he did not provide any proof from a doctor.  *Id*.  According to Garcia, however, "I was never told I had used all of my FMLA leave from the February 7, 2006, correspondence."  Doc. 26 Exh. A at 1.

On March 21, 2006, Garcia's doctor, Dr. Pacha provided ESIS with a STD status form.  Doc. 26 Exh. B.  Dr. Pacha diagnosed Garcia with Hepatitis C.  *Id*.  In his opinion, however, Garcia could return to work until treatment started for this condition.  *Id*.

On April 3, 2006, Human Resources sent a certified letter to Garcia notifying him that his FMLA leave had in fact expired and that he must re-establish his STD status, return to work or face disciplinary action, including termination.  Doc. 21 Exh.2-F at 1.  Although the certified letter was refused by Garcia, according to Rosser, Cuellar called Garcia and told him the substance of the letter.  Doc. 21 Exh. 2 at ¶18.  According to Cuellar, Garcia did not keep in regular weekly contact with the foremen supervising him to let them know when he could return to work as he was required to do.  Doc. 21 Exh. 4 at ¶6.

On April 11, 2006, according to Rosser, Garcia contacted Rosser by telephone, and Rosser made it clear to him that if he did not send supporting paperwork to ESIS establishing his continued health problems, he would be terminated.  *Id*. at ¶19.  On April 12, 2006, Garcia sent Kinder Morgan a doctor's note explaining that due to difficulty in obtaining his medical records his appointment had been postponed until April 17, 2006.  Doc. 26 Exh. E.

Garcia's doctor, Dr. Pacha, asked that Kinder Morgan excuse Garcia from work from April 9, 2006, until April 17, 2006.  *Id.*

On that same date, April 12, 2006, Kinder Morgan terminated Garcia's employment.  Doc. 21 Exh.2 at ¶19-20 & Exh.2-M.  One of the deciding factors was Garcia's refusal to accept the certified letter from Human Resources on April 3, 2006.  Doc. 21 Exh. 2 at ¶20.

The termination of Garcia's employment was in accordance with Kinder Morgan's policies.  Doc. 21 Exh. 2 at ¶21.  The Employment Termination Policy states that "Employees that do not qualify or have used their FMLA benefit and are not covered under STD will have their employment terminated unless they return to work."  Doc. 21 Exh. 2-D at 2.  The Approved Time Off and Leave of Absence Policy states that "An employee's employment with the Company will be terminated if the following conditions are met and the employee fails to return to work: 1. The employee is not eligible for or STD is inapplicable; and 2. the employee does not qualify for FMLA or 3. has used his/her FMLA benefit."  Doc. 21 Exh. 2-A at 11. Garcia's STD benefits ended when his doctor cleared him to return to work on March 20, 2006. Even if that were not the case, Garcia's FMLA Leave was maxed out as of March 27, 2006.  By April 12, 2006, Garcia had still not returned to work or re-established his STD status or applied for LTD status. Even taking into account the doctor's note on April 12, 2006, Garcia had an unexcused absence from March 20, 2006 to April 9, 2006.

After his termination, Garcia sent Kinder Morgan a letter from his doctor dated April 17, 2006, excusing his absence from work from March 9, 2006 until April 17, 2006.  Doc. 21  Exh. 2-O.  This doctor's letter also explained Garcia would soon begin his treatment for Hepatitis C.  *Id.*  On May 2, 2006, Kinder Morgan received a form certified by Garcia's doctor

prescribing a 48 week treatment for Hepatitis C and instructing that Garcia was to remain off work for the duration of the treatment. Doc. 21 Exh. 2-P at 1.

After his termination, on April 12, 2006, Garcia contacted Trippe to appeal the denial of his STD benefits from March 20, 2006, going forward. Doc. 21 Exh. 5 at ¶12. Trippe explained that Garcia should submit all of his medical records from March and April 2006 and Garcia did so. *Id*. Garcia's medical records were sent for independent review by a physician advisor to ESIS. *Id*. Based on this review, ESIS upheld the denial of Garcia's STD benefits after March 20, 2006. *Id*.

**II.          Summary Judgment Standard**

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the

essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."   W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v.*

*Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871,

889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence

to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136

F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7

(5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving

party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit &*

*Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for

summary judgment does not need to present additional evidence, but may identify genuine issues

of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v.*

*Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may

also identify evidentiary documents already in the record that establish specific facts showing the

existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167,

178 (5th Cir. 1990).  In reviewing evidence favorable to the party opposing a motion for

summary judgment, a court should be more lenient in allowing evidence that is admissible,

though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club,*

*Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

**III.    Analysis.**

**a.    Family Medical Leave Act.**

Under the FMLA "[a]n eligible employee of a covered employer has the right to

take unpaid leave for a period of up to 12 work weeks in any 12-month period when the

employee has 'a serious health condition that makes [him or her] unable to perform the functions

of [his or her] position.'" *Bocalbos v. National W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. Tex.

1998)(citations omitted). Furthermore, "the Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights." *Id*.  Garcia brings three claims: 1) he was terminated from his employment during FMLA leave; 2) Kinder Morgan interfered with his leave; and 3) Kinder Morgan terminated him in retaliation for taking FMLA leave.  These claims will be addressed in turn.

ii.       Termination 'During' FMLA Leave.

The FMLA only gives leave limited to 12 work weeks in any 12-month period. *Bocalbos*, 162 F.3d at 383.  Garcia's used up his 12 work weeks of FMLA leave as of March 27, 2006, and he was terminated for unexcused absence on April 12, 2006.  Even if, as he argues, he had a serious health problem throughout the period of his absence, his employer was not required by the FMLA to maintain his position after his FMLA leave expired.  *See* 29 CFR 825.214.  It goes without saying that by providing for a limited period of leave the FMLA rules out rights that extend beyond that limited period.

Instead Garcia asserted in his affidavit that he relied on the leave designation form telling him he was excused from work on FMLA leave until April 27, 2006.  Thus, he argues, Kinder Morgan violated the FMLA by terminating him on April 12, 2006, because they were estopped from doing so by his reasonable reliance on their representations to him. The Fifth Circuit has recognized equitable estoppel in the context of the FMLA, stating: "an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is . . . entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment." *Minard v. ITC Deltacom Communs., Inc.*, 447 F.3d 352, 359 (5th Cir. 2006).  Here, because Kinder Morgan originally informed

Garcia that he had FMLA leave until April 27, 2006, if Kinder Morgan made no further communication with Garcia, then Kinder Morgan would be prevented from arguing, as it does here, that Garcia was terminated because FMLA leave had expired and he had not returned as of April 12, 2006.

Garcia further stated in his affidavit, in support of his reasonable reliance, that Kinder Morgan never informed him that his FMLA leave in fact ended earlier after he began his leave on February 3, 2006.  Kinder Morgan seeks to strike the entirety of Garcia's affidavit as improper summary judgment evidence.  Summary judgment is proper when the non-movant relies only on unsubstantiated assertions, conclusory allegations or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. Miss. 1994).  Furthermore, "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id*.  Here, Garcia's factual support for equitable estoppel is too weak or at most is only a scintilla of evidence, and does not withstand Kinder Morgan's request for summary judgment.  Garcia himself argued that Kinder Morgan continually 'harassed' him for medical paperwork, *See* Doc. 26 at 6, which, if true, is almost conclusive confirmation that Garcia must have realized that Kinder Morgan considered that his approved leave had expired already.  Furthermore, Garcia presented as summary judgment evidence a doctor's note dated April 12, 2006, excusing his failure to present medical paperwork.  This closely followed Rosser's claim to have made a 'last chance' call on April 11, 2006, requesting medical proof from Garcia and explaining that Garcia would be fired if he failed to do so.  Even if it were not for this unintended corroboration between plaintiff and defendant's evidence, Garcia's complaints of being harassed for medical paperwork and his doctor's note are at odds with his claim that he was unaware that FMLA leave would expire

before April 27, 2006.   Garcia is in the position of claiming he knew Kinder Morgan was

demanding medical paperwork but denying he knew why.   Additionally, if he did not know

FMLA would expire, he would have no need to present a doctor's note in the middle of the leave

explaining why he had been unable as yet to present medical paperwork for continued leave.

Even if Garcia's claim that Kinder Morgan never explicitly mentioned that FMLA would expire

before April 27, 2006, is true, his reliance on the leave designation form is not reasonable in light

of all the demands made upon him for further documentation.   Garcia can not unilaterally decide

to open his ears to the good news of extended leave from Kinder Morgan and then close his ears

to the demand for medical paperwork, labeling it 'harassment.'

Garcia's was terminated for unexcused absence after he spent all his FMLA leave

and after it became clear to a reasonable person that Kinder Morgan's representation that FMLA

lave extended beyond March 20, 2006, was not reliable.   Thus, Garcia cannot make out a claim

for violation of the FMLA's leave provisions as a matter of law.

ii.       Interference with FMLA Leave.

The FMLA provides that there is unlawful interference when:

   (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain,
or deny the exercise of or the attempt to exercise, any right provided under this title [29
USCS §§ 2611 et seq.].

Garcia argues his leave was interfered with when Kinder Morgan 'harassed' him for

medical paperwork to re-establish his STD status or face termination for not returning to work.

Clearly such a claim is highly specious as Kinder Morgan acted within its rights as an employer

to demand proof of a serious health condition since this was a requirement of FMLA leave.  *See*

*Bocalbos,* 162 F.3d at 383.

Garcia's other argument is that Kinder Morgan knew, thanks to the March 21, 2006, form filled out by Dr. Pacha that Garcia would need serious medical treatment and LTD benefits.  Thus, Garcia argues Kinder Morgan interfered with his rights under the FMLA when it terminated him in order to avoid paying him LTD benefits and treatment costs.  There is no specific provisions in the FMLA, however, dealing with the right of an employee to notify his employer of a potential long term disability during FMLA and to therefore be retained despite not returning to work after FMLA ends.  In fact, the FMLA rights are limited to a certain time period and Kinder Morgan gave Garcia his allotted time.  Thus, there was no interference.

iii.      Retaliation for Taking FMLA Leave.

Garcia alleges that Kinder Morgan retaliated against him for taking FMLA leave. Retaliation for exercising the rights granted under the FMLA based on circumstantial evidence is assessed using the same *McDonnell Douglas* burden shifting framework as the civil rights laws. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001).  Under this framework, Garcia may create an inference of discrimination by showing (1) that he engaged in an activity protected by the FMLA; (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005); *see also Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001).  If the plaintiff is successful, an inference of discrimination is created and the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse employment decision.  If the defendant articulates a legitimate reason, then the inference of discrimination falls away and plaintiff is left with the burden of proving that defendant's articulated legitimate reason was a pretext for retaliation.  *Keelan v. Majesco Software Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

Assuming *arguendo* that Garcia established a *prima facie* case, the Court finds that he fails to demonstrate that Kinder Morgan's proffered non-retaliatory reason for his termination is pretextual.  Kinder Morgan argued that it terminated Garcia because he failed to return to work after his FMLA leave expired.  Garcia counters with the same equitable estoppel argument on which he based his leave violation claim, arguing that as his leave had not expired because he reasonably relied upon being told it would last until April 27, 2006.  Thus, according to Garcia, Kinder Morgan's termination was retaliatory because it occurred before his leave should have expired.  Having found the equitable estoppel argument to be without merit, the Court finds that Garcia's fails to meet his burden of proof that the proffered reason is pretextual.

Furthermore, it is not necessarily *per se* retaliation if an employer terminates an employee before the time when the employee can still claim FMLA coverage due to equitable estoppel.  The circumstances justifying equitable estoppel often arise from genuine confusion, rather than a retaliatory motive since intent to deceive on the part of the employer is not required. *See Minard*, 447 F.3d at 359.   Here, even if Garcia had reasonably relied on leave lasting past April 12, 2006, Garcia still fails to demonstrate that Kinder Morgan did not believe he was absent without leave and so does not throw doubt on Kinder Morgan's proffered reason.

**b.**     **ADA Claim.**

Garcia alleges Kinder Morgan's termination violated the ADA.  The ADA prohibits discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a); *see also Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir.1995); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir.1995). The term "qualified

individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the indirect method of proof set for Title VII actions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973), may also be utilized. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Under the McDonnell Douglas analysis, a plaintiff must first make out a prima facie case of discrimination by showing that: (1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *See Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 254 (5th Cir.1990); *EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 340-41 (5th Cir.1982).

Once the plaintiff has stated a prima facie case, the defendant must "articulate some legitimate nondiscriminatory reason" for its action that adversely affected the employee. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, (1981). While an employer need not prove the legitimate reason, it must produce some evidence to support it. If the employer produces any evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has satisfied its burden of production. Once the employer has met its burden, the shifting burden scheme is abandoned and becomes irrelevant. The employer's intent is a question of fact, for which the plaintiff carries the burden of persuasion.

Assuming *arguendo* that Garcia establishes a *prima facie* case, the Court finds he fails his ultimate burden of demonstrating that Kinder Morgan's proffered reason for terminating him is pretextual. Kinder Morgan proffers as its reason for terminating Garcia that he remained absent from work after the end of his FMLA leave. Garcia argues that his termination was a preemptive move against him because Kinder Morgan knew he was disabled due to his Hepatitis C. Kinder Morgan, however, was unaware that Garcia had Hepatitis C. That information was given only to Kinder Morgan's third party claims administrator ESIS. Kinder Morgan's Human Resources operated independently of any knowledge of Garcia's medical condition. Thus, this refutes Garcia's contention that his medical condition was Kinder Morgan's true motive in discharging him.

Furthermore, Garcia argues that he properly applied for FMLA leave and received it until April 27, 2006. Thus, he looks to another motive for his termination. As explained above, however his argument that FMLA leave was until April 27, 2006, due to reasonable reliance, has been discounted, and, further, is not proof that Kinder Morgan did not genuinely believe leave ended on March 20, 2006. Thus, Garcia's argument has no foundation. His claim for disability discrimination fails as a matter of law.

### c.      Breach of Contract Claim

Garcia's final claim is that Kinder Morgan breached a contract with him by denying him STD and LTD benefits. Kinder Morgan counters that this claim fails as a matter of law because it is pre-empted by the Employment Retirement Income Security Act ("ERISA"). The Court agrees.

ERISA § 502(a)(1)(B) provides:

"A civil action may be brought--(1) by a participant or beneficiary-- . . .
(B) to recover benefits due to him under the terms of his plan, to enforce his rights

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) [29 USCS § 1132(a)(1)(B)].

"[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (U.S. 2004). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209. The STD and LTD benefits Garcia seeks from Kinder Morgan would only be granted via a Kinder Morgan plan regulated by ERISA. Therefore, Garcia's breach of contract claim would impinge upon ERISA's regulation of access to those benefits. As such, his claim is pre-empted and fails as a matter of law.

### d.     Motion to Dismiss.

Third Parties move to dismiss the claims against them for lack of service of process under Fed. R. Civ. P. 12(b)(5). Garcia has not served Third Parties despite naming them in his complaint. Furthermore, the motion to dismiss is unopposed. Consequently, the Court dismisses the action as to the Third Parties.

## IV.     Conclusion

Accordingly, it is hereby ORDERED that Kinder Morgan's Motion for Summary Judgment (Doc. 21) is GRANTED.

And, further, it is hereby ORDERED that Third Parties' Motion to Dismiss (Doc. 22) is GRANTED.

SIGNED at Houston, Texas, this 8th day of June, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE